Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: abogadakarla@gmail.com

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISON**

| | |
|---|---|
| Kenny Rene SALAZAR-MEDINA<br><br>Petitioner,<br><br>v.<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, U.S. Attorney General; Todd LYONS, Senior Official Performing the Duties of the Director, Immigration and Customs Enforcement; Jaime RIOS, Acting Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; Fereti SEMAIA, Warden, Adelanto ICE Processing Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents-Defendants. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>PETITIONER'S DHS NO:<br>213-348-876 |

**INTRODUCTION**

1. Petitioner, Kenny Rene Salazar-Medina, brings this Petition for Writ of Habeas Corpus under 28 U.S.C. 2241 to challenge the legality of his re-detention and his ongoing detention in custody of the U.S. Immigration and Customs Enforcement ("ICE").

2. Petitioner's alien number is 213-348-876. Petitioner is a native and citizen of Nicaragua. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER ("Adelanto Detention Center") in Adelanto, California by immigration authorities.

3. Petitioner entered this country to seek asylum, and the Department of Homeland Security ("DHS") found that he posed neither a danger nor flight risk and released him in the U.S. upon entering the country. Petitioner complied with DHS's various and multi-layered monitoring requirements like ICE check-ins. But despite the fact that he complied with the regulations of release and has not acquired any criminal arrests and/or convictions DHS rearrested Petitioner in August 2026 during an ICE appointment.

4. Petitioner requested a Bond and Custody Redetermination Hearing. The hearing took place on September 8, 2026. The bond was denied based on jurisdiction under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). Petitioner appealed this decision with the Board of Immigration Appeals ("BIA") and it is currently pending.

5. Respondents are violating Petitioner's substantive due process rights under the Fifth Amendment. Civil immigration detention is only permissible when it serves to prevent the risk of danger to the community or flight, and if it does not serve either of those goals, it is unconstitutionally punitive. *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004); *Zadvydas v. Davis,* 533 U.S. 678, 690 (2001). Respondents already determined that the Petitioner did not pose such a risk, and because each Petitioner's conduct in the U.S. has only further evidenced these initial determinations, Respondents cannot be said to have had any legitimate basis for re-detention.

6. Respondents also violated Petitioner's procedural due process rights under the Fifth Amendment, and the Court is empowered to grant Petitioner's petition on this violation alone.[1] Petitioner has a profound and protected interest in their liberty–in waking up in their homes, going to work, and returning each day to their community. Respondents were required, but utterly failed, to provide Petitioner with due process before depriving them of liberty, which here, would have required a hearing before a neutral adjudicator to determine whether re-detention was constitutionally warranted.

7. For the same reasons, Respondents violated Petitioner's Fourth Amendment rights against unreasonable seizures. The Fourth Amendment protects against "harassment by rearrest" by forbidding rearrest without a change in circumstances and applies to noncitizens. Respondents rearrested the Petitioner without any such showing. Respondents' decision to re-detain each Petitioner was arbitrary, capricious, an abuse of discretion, and contrary to constitutional right, and as such, also violated the Administrative Procedure Act ("APA").

8. For these reasons and as further explained below, Petitioner asks this Court to order their immediate release, and to enjoin Respondents from violating these rights in the future.

## JURISDICTION & VENUE

9. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

11. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue

[1] *See e.g., N.K. v. Noem*, No. 1:26-cv-00292- KES-SAB (HC), 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1166 (S.D. Cal. 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

12. Further, pursuant to *Braden V. 30th Judicial Circuit Court to Kentucky*, 410 U.S. 484, 493 – 500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

**REQUIREMENTS OF 28 U.S.C. § 2243**

13. The court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

14. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

**PARTIES**

15. Petitioner, Kenny Rene Salazar-Medina, is a Nicaraguan citizen who has resides in Maywood, CA. He is removal proceedings and is currently detained at the Adelanto ICE Processing Center.

16. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, which is responsible for Petitioner's detention. Respondent Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

17. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review, and the

BIA and immigration court system it operates, is a component agency. He is sued in his official capacity.

18. Respondent Todd Lyons is the Senior Official Performing Duties of the Director of U.S. Immigration and Customs Enforcement, a federal law enforcement agency within the Department of Homeland Security. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Senior Official Performing Duties of the Director, Respondent Lyons exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioners' immediate custodian and is responsible for Petitioners' detention. He is sued in his official capacity.

19. Respondent Jaime Rios is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division. As such, he is the custodian of all persons held at the ICE facilities within the Los Angeles Field Office. He is Petitioners' immediate custodian and is responsible for Petitioners' detention. He is sued in his official capacity.

20. Respondent Fereti Semaia, is the Warden of the Adelanto ICE Processing Center and Desert View Annex, Adelanto, California, where Petitioners are detained. He has immediate physical custody of Petitioners. He is sued in his official capacity.

21. Respondent Executive Office for Immigration Review (EOIR) is the federal agency within the Department of Justice responsible for implementing the INA in removal proceedings, including for custody redeterminations or bond hearings.

22. Respondent Department of Homeland Security is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

23. Respondent Immigration and Customs Enforcement is the agency within DHS responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

## STATEMENT OF FACTS

24. Petitioner, Kenny Rene Salazar-Medina, is a native and citizen of Nicaragua currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Center.

25. Petitioner is twenty-nine (29) years old and came to the United States fleeing persecution from his native country. He entered the United States on December 19, 2022, and was detained

for a few days. On December 21, 2022, he was paroled into the U.S. and released into the country. (***See* Exhibit A – Parole Stamp**). At that time Petitioner was not served with a "Notice to Appear," but was told he will need to check-in with ICE from time to time as a condition of his parole.

26. Since Petitioner was not in removal proceedings during this time and could not file his I-589, Application for Asylum ("I-589") with the Immigration Court but he still followed the law and the one-year requirement. Petitioner filed his I-589 with the U.S. Citizenship and Immigration Services ("USCIS") on November 8, 2023. (***See* Exhibit B – I-589 Receipt Notice**). Petitioner also completed his biometrics notice completely following the terms of parole and release. (***See* Exhibit C – ASC Biometrics Confirmation**).

27. Through this pending asylum application Petitioner filed and received an Employment Authorization Document ("EAD") that expires until May 8, 2029. (***See* Exhibit D – Employment Authorization Document**).

28. On August 11, 2026, Petitioner was asked to go to the Los Angeles ICE Office. He did not abscond and went to his appointment as he was following the terms of his conditions. At this appointment, after being questioned he was detained and transferred to the Adelanto Detention Center. (***See* Exhibit E – Form I-213**). Petitioner followed all their regulations when he was paroled into the country and was still detained without notice or motive. Petitioner was then finally served with an NTA. (***See* Exhibit F – Notice to Appear**).

29. Petitioner requested a Bond and Custody Redetermination Hearing, and it took place on September 8, 2026.The bond was denied based on jurisdiction under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). (***See* Exhibit G – Bond Denial Order**).

30. Petitioner appealed this decision with the BIA and it is currently pending. The appeal is futile and will cause significant delay, impinging on Petitioner's due process and liberty interests. Petitioner's detention violates the Immigration and Nationality Act, the accompanying regulations, and Petitioner's right to Due Process. However, it is likely this appeal will not go anywhere because the BIA will cite *Matter of Q. Li,* to affirm the decision, even though the Petitioner Has been in the country for four (4) years.

31. Respondents are engaged in a campaign of arresting as many noncitizens as possible, without individualized consideration of constitutional rights or immigration histories.

32. Respondents are engaged in a campaign of arresting as many noncitizens as possible, without individualized consideration of constitutional rights or immigration histories.

33. Respondents are engaged in a campaign of arresting as many noncitizens as possible, without individualized consideration of constitutional rights or immigration histories. Since coming into power, the current executive administration has engaged in a campaign of widespread and indiscriminate arrests. Respondents DHS and DOJ have enacted arrest quotas[2]; expanded detention by precedential decision-making,[3] building and repurposing structures to acquire more detention space,[4] and engaging the military for enforcement and adjudication efforts[5]; promulgated policies to permit arrests in previously forbidden spaces[6] without regard to family separation[7]; and purportedly awarded bonuses to their officers based on increased arrest numbers.[8]

---

[2] Ted Hesson & Kristina Cooke, DHS's Tactics Draw Criticism as it Triples Daily Arrest Targets, Reuters, June 10, 2025, https://www.reuters.com/world/us/ices-tactics-draw-criticism-it-triples- daily-arrest-targets-2025-06-10/; Alayna Alvarez & Brittany Gibson, DHS Ramps Up Immigration Arrests in Courthouses Across the U.S., Axios, June 12, 2025, https://www.axios.com/2025/06/12/ice-courthouse-arrests-trump.

[3] *Matter of Q.Li*, 29 I&N Dec. 66 (BIA 2025); *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

[4] MacMillan, Douglas, et al., ICE Documents reveal plan to double immigrant detention space this year, The Washington Post (August 15, 2025), https://www.washingtonpost.com/immigration/2025/08/15/ice-documents-reveal-plan-double-immigrant-detention-space-this-year/.

[5] Alvarez, Priscilla and Natasha Bertrand, Trump's move to use military for immigration enforcement was months in the making, CNN (June 12, 2025), https://www.cnn.com/2025/06/12/politics/immigration-protests-military-national-guard; O'Herron, Margy, Using Military Lawyers as Immigration Judges is Ill-Advised and Potentially Illegal, Brennan Center (Sept. 29, 2025), https://www.brennancenter.org/our-work/analysis-opinion/using-military-lawyers-immigration-judges-ill-advised-and-potentially. .

[6] Memorandum from Sirce E. Owen, Acting Director of EOIR, OPPM 25-06, Cancellation of Operating Policies and Procedures, to All of EOIR (Jan. 28, 2025); Todd M. Lyons, Acting DHS Director, Policy Number 11072.4, Civil Immigration Enforcement Actions In or Near Courthouses (May 27, 2025).

[7] U.S. Customs and Immigration Enforcement, ICE Directive 11064.4: Detention and Removal of Alien Parents and Legal Guardians of Minor Children (July 2, 2025), https://www.ice.gov/doclib/foia/policy/11064.4.pdf.

[8] Kleeman, Jenny, "'Don't go to the US – not with Trump in charge': the UK tourist with a valid visa detained by ICE for six weeks," THE GUARDIAN (Feb. 21, 2026), https://www.theguardian.com/us-news/2026/feb/21/karen-newton-valid-visa-detained-ice

34. Across the nation, federal courts–following the still relatively-limited occasions detained noncitizens are able to access them–have repeatedly found the administration's actions unlawful and unconstitutional.[9] This district alone has been flooded with such challenges to re-detention, finding virtually universally that the administration's indiscriminate arrests and detention tactics violate the Constitution and law. *See*, *e.g.*, *Singh v. Andrews*, -- F. Supp. 3d --, 2025 WL 1918679 (E.D. Cal. July 11, 2025); *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025); *Garcia-Ayala v. Andrews*, No. 2:25-cv-02070-DJC-JDP, 2025 WL 2597508 (E.D. Cal. Aug. 8, 2025); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO (HC), 2025 WL 2230521 (E.D. Cal. Aug. 4, 2025); *Yuhua Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778 (E.D. Cal. Aug. 20, 2025); *Guzman v. Andrews*, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *J.O.L.R. v. Wofford*, No. 1:25-cv-01241-KES-SKO, 2025 WL 2718631 (E.D. Cal. Sept. 23, 2025); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 112 (E.D. Cal. 2025); *Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025); *J.C.L.A. v. Wofford*, 1:25-cv-01310-KES-EPG, 2025 WL 2959250 (E.D. Cal. Oct. 17, 2025); *Fernandez Lopez v. Wofford*, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319 (E.D. Cal. Oct. 17, 2025); *J.A.E.M. v. Wofford*, -- F. Supp. 3d –, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377 (E.D. Cal. Oct. 27, 2025); *F.M.V. v. Wofford*, No. 1:25-cv-01381-KES-SAB, 2025 WL 3083934 (E.D. Cal. Nov. 4, 2025); *Khan v. Noem*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352 (E.D. Cal. Nov. 5, 2025); *Gomez Vilela v. Robbins*, No. 1:25-cv-01393-KES-HBK, 2025 WL 3101334 (E.D. Cal. Nov. 6, 2025); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562 (E.D. Cal. Nov. 10, 2025); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *1 (E.D. Cal. Nov. 21, 2025); *Yurani Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025); *Garcia Mariagua v. Chestnut*, No. 1:25-cv-01744-DJC-CSK, 2025 WL

---

[9] Cheney, Kyle, More than 220 judges have now rejected the Trump admin's mass detention policy, POLITICO (Nov. 28, 2025), https://www.politico.com/news/2025/11/28/trump-detention-deportation-policy-00669861.

3551700 (E.D. Cal. Dec. 11, 2025); *Selis Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP (HC), 2025 WL 3567862, *11 (E.D. Cal. Dec. 14, 2025); *H.F. v. Albarran*, No. 1:25-CV-01795-TLN-EFB, 2025 WL 3691081 (E.D. Cal. Dec. 19, 2025); *Kaur v. DHS*, No. 1:25-CV-01726-TLN-SCR, 2025 WL 3706724 (E.D. Cal. Dec. 22, 2025); *Marcos B.D.S. v. Warden of Mesa Verde Det. Facility*, No. 1:25-CV-02032-TLN-CSK, 2026 WL 82344 (E.D. Cal. Jan. 12, 2026); *Elias C.M. v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-02043-TLN-EFB, 2026 WL 127612 (E.D. Cal. Jan. 16, 2026); *Martinez v. Chestnut*, No. 1:25-CV-1826 TLN CKD P, 2026 WL 121221 (E.D. Cal. Jan. 16, 2026), *report and recommendation adopted*, No. 1:25-CV-1826-TLN-CKD, 2026 WL 243672 (E.D. Cal. Jan. 28, 2026); *J.D. B.R. v. Wofford*, No. 1:25-cv-02009-TLN-CKD, 2026 WL 234661 (E.D. Cal. Jan. 28, 2026); *Moises V.A. v. Wofford*, No. 1:25-cv-01419-SKO (HC), 2026 WL 252237 (E.D. Cal. Jan. 30, 2026); *J.A. C.B. v. Noem*, No. 1:26-CV-00934-DC-CSK (HC), 2026 WL 330609 (E.D. Cal. Feb. 6, 2026); *Sorosh v. Wofford*, No. 1:26-CV-00409 DAD SCR, 2026 WL 323058 (E.D. Cal. Feb. 6, 2026), *report and recommendation adopted*, No. 1:26-CV-00409-DAD-SCR (HC), 2026 WL 498398 (E.D. Cal. Feb. 23, 2026); *Pinell-Sanchez v. Chestnut*, No. 1:26-CV-01282-DC-AC (HC), 2026 WL 539414 (E.D. Cal. Feb. 26, 2026).

35. Respondents released Petitioner after finding they posed neither a danger nor flight risk, but suddenly rearrested them this year. Petitioner entered the U.S. seeking asylum. DHS arrested them nearly immediately after their arrival and detained them for a couple of days. After determining that their release would pose neither a risk of flight nor a danger to the community, DHS released each Petitioner pursuant to their authority under one of two statutes: 8 U.S.C. § 1226(a)(2), which authorizes "conditional parole" of noncitizens detained under 8 U.S.C. § 1226(a); or 8 U.S.C. § 1182(d)(5)(a), which authorizes "parole" of noncitizens detained under 8 U.S.C. § 1182(d)(5)(a). *See* 8 C.F.R. § 236.1(c)(8) (authorizing conditional parole where noncitizen demonstrates release would not present danger or flight risk); 8 C.F.R. § 212.5(b) (authorizing parole where noncitizen demonstrates the same, as well as additional conditions).

36. Petitioner entered the United States on December 19, 2022. Respondents detained them

monetarily and then released Petitioner under parole. When he was released, he was given regulations of going to ICE check-ins. Then Petitioner was re-detained on August 11, 2026, during an ICE appointment.

## LEGAL FRAMEWORK AND ARGUMENT

37. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V.

38. Petitioner can file a Writ of Habeas Corpus under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

39. The protections of habeas corpus extend to those in immigration detention. See *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020); *Nadarajah v. Gonzales,* 443 F.3d 1069, 1075-76 (9th Cir. 2006). Accordingly, noncitizens may invoke habeas in immigration-related matters where no other statutory mechanism for review is provided. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

40. 28 U.S.C. § 2241 confers on federal district courts "within their respective jurisdictions" the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States . . . ." Id. §§ 2241(a), (c). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston*, 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley*, 506 U.S. 20, 31 (1992); *Sumner v. Mata*, 449 U.S. 539, 551 (1981).

41. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V.

42. While the immigration laws afford DHS discretion over its decisions to arrest, detain, and revoke prior release decisions, those decisions are nonetheless constrained by the laws Congress has enacted and the requirements of the Constitution, including the Due Process Clause. *See generally Zadvydas*, 533 U.S. at 690; *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Due Process protections include procedural due process, which requires that deprivations of life, liberty, or property be conducted in a fair manner, and substantive due process, which "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted).

43. Indeed,"[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

44. Respondents are violating Petitioner's Fifth Amendment Substantive Due Process rights. Immigration detention only comports with Due Process when it furthers the government's regulatory goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id*. Where civil DHS detention is not related to a permissible regulatory goal, is "excessive in relation" to a permissible regulatory goal, or is "employed to achieve objectives that could be accomplished" with "alternative and less harsh methods," the detention amounts to punishment in violation of the individual's substantive due process rights. *Jones*, 393 F.3d at 931-32. Thus, DHS detention violates Substantive Due Process where it is not justified by flight risk or danger concerns. *See id*. *See also Hernandez*, 872 F.3d at 990 (any detention incident to removal proceedings must "bear[] [a] reasonable relation" to the government's interest in mitigating the risks of danger to the community and preventing flight); *Velasco Lopez v. Decker*, 978 F.3d 842, 857 (2d Cir. 2020). For this reason, DHS detention for the purposes of meeting quotas, punishment, deterring immigration, or encouraging voluntary deportation would violate Due Process. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 188–89 (D.D.C. 2015) (observing that "[i]n discussing civil commitment more broadly, the [Supreme] Court has declared such 'general deterrence' justifications impermissible" and finding likely

contrary to Due Process a deterrence policy pursuant to which DHS detained "one particular individual" for purposes of "sending a message of deterrence to other[s ] who may be considering immigration" (citing *Kansas v. Crane*, 534 U.S. 407, 412 (2002)).

45. In the case of Petitioner their detention bears no reasonable relation to a legitimate government purpose. Petitioner was detained upon arrival into the country and subsequently released from DHS custody within days of arriving in the United States. Their release from detention *necessarily* required a determination by Respondents that they were neither a danger to the community nor a risk of flight. *See* 8 C.F.R. § 236.1(c)(8); 8 C.F.R. § 212.5(b). And, even if that were not the case, their subsequent conduct indicates that they are neither dangerous nor present risk of flight, and, as such, Petitioner's detention violates their substantive due process rights. *See Zadvydas,* 533 U.S. at 690. *See also Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1034 (N.D. Cal. 2025) (finding that because "[t]he regulations authorizing DHS to release a noncitizen from custody requires the noncitizen demonstrate . . . release would not pose a danger to property or persons and that the noncitizen would appear for any future hearing . . . . Release therefore reflects a determination by the government that the noncitizen is not a danger to the community or a noncitizen."). Another court in this district in an analogous case recently granted on this claim. *See G.M. v. Chestnut*, No. 1:26-cv-00369-TLN-CSK, 2026 WL 127613, *2 (E.D. Cal. Jan. 17, 2026). In *G.M.*, the petitioner was re-detained despite having already been found to pose neither a danger nor flight risk–as evidenced by "Respondents previously releasing him from custody." *Id.* The court found that because he had "made a good-faith effort to comply with all terms of his release," he had raised "at the very minimum" serious questions going to the merits of his claim that Respondents' re-detention violated his substantive due process rights as it did not appear serve one of the only two authorized purposes for immigration detention–preventing danger and preventing flight. *Id. See also Hoang v. Santa Cruz*, No. 25-2766-JGB-JCX, 2025 WL 3141857 at *4 (C.D. Cal. Oct. 28, 2025) (finding likelihood of success on the merits of claim that re-detention violates substantive due process).

46. There was no ISAP violations from Petitioner. He complied fully with his regulations.

47. Not only have Respondents already decided that Petitioner's ongoing detention serves no legitimate purpose; they are actively subjecting each to "inherently harsh" and outright punitive conditions that are excessive in relation to any purported purpose for detention. *Supra*, Statement of Facts, Section III; *Jones*, 393 F.3d at 931-32. Without doubt, Respondents are actively violating Petitioner's substantive due process rights, and immediate release is required.

48. Petitioner's re-detention violated their Fifth Amendment Procedural Due Process rights.

49. "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrisey v. Brewer*, 408 U.S. 471, 482 (1972).[10] "[E]ven when DHS has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Garro Pinchi*, 792 F. Supp 3d at 1032 (citing *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)).

[10] In *Morrissey*, the Supreme Court examined the "nature of the interest" that a parolee has in "his continued liberty." 408 U.S. at 481-82. The Court noted that "subject to the conditions of his parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. The Court further noted that "the parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The Court explained that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* In turn, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Morrissey*, 408 U.S. at 482. This basic principle—that individuals have a liberty interest in their conditional release—has been reinforced by both the Supreme Court and the circuit courts on numerous occasions. *See, e.g., Young v. Harper,* 520 U.S. 143, 152 (1997) (holding that individuals placed in a pre-parole program created to reduce prison overcrowding have a protected liberty interest requiring pre-deprivation process); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973) (holding that individuals released on felony probation have a protected liberty interest requiring pre-deprivation process); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (holding "[c]ourts have resolved the issue [of whether specific conditional release rises to the level of a protected liberty interest] by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."). *See also Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated") (citing *Young*, 520 U.S. at 152, *Gagnon*, 411 U.S. at 782, and *Morrissey*, 408 U.S. at 482).

50. If, as here, a Petitioner identifies a protected liberty interest, the Court must then determine what process is due, considering three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). The Court need not determine whether § 1225 or § 1226 applies in this case because petitioner[s] ha[ve] a liberty interest in [their] continued release regardless of the applicable detention scheme." *See Cajina v. Wofford*, No. 1:25-cv-01566-DAD-AC (HC), 2025 WL 3251083, *3 (E.D. Cal. Nov. 21, 2025).

51. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing *Morrissey*, 408 U.S. at 481-82). This Court must "balance [Petitioners/Plaintiffs'] liberty interest against the [government's] interest in the efficient administration of" its immigration laws in order to determine what process they are owed to ensure that DHS does not unconstitutionally deprive them of their liberty. *Id*. at 1357.

52. Petitioner's private interest in their liberty is profound. At stake for Petitioner is one of the most profound individual interests recognized by our legal system: their "constitutionally protected interest in avoiding physical restraint." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (internal quotation omitted). Courts in this district have repeatedly found that noncitizens released by DHS on parole or on their own recognizance have a substantial private interest in being out of custody and that detention denies them that liberty interest. *See, e.g.*, *J.C.L.A.*, 2025 WL 2959250, at *3 (finding petitioner released on own recognizance under 1226(a) had protected liberty interest); *J.A.E.M.*, 2025 WL 3013377, at *6 (same); *Vilela*, 2025 WL 3101334, at *3-5; *Garcia Mariagua*, 2025 WL 3551700, at *3 (same); *Singh v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-01689-EPG-HC, 2026 WL 171952, at *4-5 (E.D. Cal. Jan. 22, 2026)

(same). *See also Ramazan M.*, 2025 WL 3145562, at *4-6 (finding petitioner released on parole under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(b) had protected liberty interest); *Sorosh*, 2026 WL 323058, at *3, r*eport and recommendation adopted*, 2026 WL 498398 (same); *Christopher Martinez*, 2026 WL 121221, at *2-3, *report and recommendation adopted*, 2026 WL 243672 (same, where at re-detention, ICE alleged "noncompliance" with reporting requirements); *Elias C.M.*, 2026 WL 127612, at *2-3 (same but for petitioner who had an intervening arrest for spousal battery). This Court should do the same here.

53. The risk of erroneous deprivation of Petitioner's liberty is high, as their own re-detentions show, without the added process of a pre-deprivation hearing before a neutral adjudicator. Where a petitioner "was previously released following a determination that he posed no flight risk or danger to the community, and absent any new evidence showing a material change in circumstances, the risk of erroneous detention without a hearing is substantial." *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No. 14, at *6 (ordering petitioner's immediate release where he was re-detained without pre-deprivation hearing). *See also Qazi v. Albarran*, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, *6 (E.D. Cal. Oct. 10, 2025) (enjoining Respondents from redetention absent demonstrating "material" change in circumstances); *Velasquez-Cordova v. Lyons*, No.: 26-cv-417-JO-DEB, 2026 WL 353353, *1 (S.D. Cal. Feb. 9, 2026) (same). Here, DHS released each Petitioner-Plaintiff within {days to months of their entry into the U.S.}, after finding that each demonstrated their release would pose neither a flight risk nor danger. *See supra*, Statement of Facts, Section II. And as explained below: their conduct in the U.S. has only further evidenced their lack of risk, and there is no "evidence showing a material change in circumstances." *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No. 14, at *6.

54. To comport with due process, a pre- and not post-deprivation hearing is required. "[T]he root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis added). For that reason, the Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in

original). A post-deprivation process can be an adequate remedy in a "special case," where: (1) it is "the *only* remed[y] the State could be expected to provide" because a pre-deprivation process would be "impossible"; and (2) "one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue." *See id.* at 128-29. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the [re]detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025).

55. Here, the Petitioner presents *any* "urgent concerns" that would justify a post-deprivation process. *See Guillermo M.R. v. Kaiser*, 791 F.Supp.3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process"). Their re-detentions thus prove that the risk of erroneous deprivation (and ensuing harmful consequences, *infra*, Statement of Facts, Section III), is incredibly high.

56. The pretextual basis Respondents may offer to justify the re-detention of Petitioner is unclear, as he has never had any interactions with the criminal system and to their knowledge, have complied with all monitoring requirements and conditions. But even if such circumstances did exist, as indicated above, they do not justify re-detention absent due process *prior* to the deprivation of their liberty.

57. The re-detention of Petitioner, and the ongoing, irreparable harm they have consequently experienced, demonstrate that "the value of predeprivation safeguards" is far from "negligible in preventing the kind of deprivation at issue" such that Respondents *must* be required to provide–as countless courts have also found–a pre-deprivation process. *See Zinermon*, 494 U.S. at 128-29. Procedural due process warrants their immediate release.

58. Due process requires Respondents to bear a high burden of proof. At any hearing, Respondents must bear the burden of proof by clear and convincing evidence to show the necessity of a noncitizen's re-detention. *See Singh*, 2025 WL 1918679, at *8 ("Considering the substantial private interest at stake, the risk of erroneous deprivation through the procedures used, and the government's relatively lesser interest in this case, the Court finds that the Due

Process Clause requires a predeprivation bond hearing where the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community."); *Perera v. Jennings*, 598 F.Supp.3d 736, 746-47 (N.D. Cal. 2022) ("It would be improper to ask [petitioner] to share equally with society the risk of error when the possible injury to the individual—deprivation of liberty—is so significant.") (internal citations and quotation marks omitted); *Pham v. Becerra*, 717 F.Supp.3d 877 (N.D. Cal 2024) (same). In cases where–as here–DHS re-detained noncitizens it had originally released after the noncitizens' initial entry into the country, district courts have found that the Due Process Clause requires the government to bear the burden. *See, e.g.*, *Garcia Mariagua*, 2025 WL 3551700, at *5; *Ramazan M.*, 2025 WL 3145562, at *8-9; *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG, 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).

59. Due process also requires a neutral adjudicator, which Respondent DOJ is currently unable to provide. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). *See also Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091-92 (9th Cir. 2011) (neutral adjudication decreases the risk of erroneous deprivation). Yet at this time, Respondent DOJ is unable to provide neutral adjudication. As a former senior EOIR official and military judge recently observed: "I don't think the immigration-court system is a court system . . . What this Administration wants is a rubber stamp."[11]

60. Indeed, the systematic transformation of EOIR (the subagency within the DOJ that houses the Immigration Courts and BIA) into an instrument of the current administration's enforcement agenda has made it structurally incapable of providing Petitioner with the impartial tribunal and individualized assessment that due process requires. *See* Memorandum Opinion and Order, *Avilez Aguinaga v. Warden*, No. 4:26-0137 (S.D. Texas Feb. 2, 2026) (ordering

[11] Kim, Tammy E., "Inside Donald Trump's Attack on Immigration Courts," THE NEW YORKER (Oct. 23, 2025), https://www.newyorker.com/inside-donald-trumps-attack-on-immigration-court.

immediate release rather than a bond hearing after acknowledging the argument that "immigration courts have been systematically transformed and are no longer capable of providing an impartial tribunal and individualized assessment"); *Qazi v. Albarran*, No. 2:25-CV-02791-TLN-CSK, 2025 WL 3033713, at *6 (E.D. Cal. Oct. 10, 2025) ("Based on Petitioner's request, the Court orders the hearing to occur before a neutral adjudicator. However, the Court expresses serious doubt as to whether the use of Immigration Officers to make factual findings and determinations comports with due process.") (citation omitted); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D.W. Va. Feb. 4, 2026) (ordering immediate release of re-detained petitioner initially released by DHS on own recognizance, and finding "there is no chance any [bond] hearing that occurred would comport with due process."); *Umarov v. Mason*, No. 2:26-CV-00081, 2026 WL 381614, at *8 (S.D.W. Va. Feb. 11, 2026) (same, quoting *Briceno Solano*).

61. This Court unequivocally has the authority to conduct Petitioner's bond hearings in the first instance. *See, e.g.*, *Zheng v. Albarran*, No. 1:25-cv-01685-DJC-CKD, 2025 WL 3640676 (E.D. Cal. Dec. 16, 2025) (enjoining Respondents from re-detention "absent a showing *to the Court* that there is a change in circumstances to warrant Petitioner's re-detention" (emphasis added)); *L.G.M. v. Larocco*, No. 25-CV-2631-PKC, 2025 WL 2173577 (E.D.N.Y. July 31, 2025) (conducting bond hearing); *Leslie v. Holder*, 865 F. Supp. 2d 627, 633 (M.D. Pa. 2012) (collecting cases where district court conducted bond hearing). *See also Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."). In addition, the Court has just as much—if not more—expertise in applying the facts to relevant standards of dangerousness and flight risk. *See, e.g., Elias Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *6 (N.D. Cal. April 20, 2017) (analogizing clear and convincing standard in immigration bond context to its use in bail hearings under Bail Reform Act); *Salazar-Leyva v. Sessions*, No. 17-cv-04213-EMC, 2017 WL 3232519 at *2 (N.D. Cal. July 28, 2017) (same); *Jennings v. Rodriguez*, 583 U.S. 281, 334 (2018) (Breyer, J., dissenting) (same). Because the agency is in no position to provide neutral

adjudication, any such hearing must instead occur before this Court to ensure it is conducted by a neutral adjudicator as due process requires.

62. To begin, IJs and BIA members are career attorneys within the DOJ who ultimately report to the Attorney General, an appointee of the executive branch. This makes IJs and BIA members "very susceptible to pressure from above to decide cases in a certain way." Karen Musalo et. al., *With Fear, Favor, and Flawed Analysis: Decision-Making in U.S. Immigration Courts*, 65 B.C. L. Rev. 2743, 2755 (2024); Holper, 74 Duke L.J. at 1010 (also describing an IJ as "a prosecutor masquerading as a judge."). *See also* Mary Holper, *Discretionary Immigration Detention*, 74 Duke L.J. 961, 972 (2025) (describing bond hearings as "law free zones").

63. The evidence that EOIR has transformed into an enforcement arm of ICE (a subagency within DHS) is evident through: 1) the ongoing mass-scale purge of IJs perceived as obstacles to the administration's enforcement agenda, and their replacement by administration loyalists; (2) the parallel purge and reconstitution of the BIA, yielding a 97% pro-government decision rate that will approach 100% after the implementation of a new rule; and (3) EOIR policy directives establishing expectations that adjudications favor the government over noncitizens, including when doing so defies federal court orders. Together, this evidence conclusively demonstrates the systematic destruction of EOIR's ability to neutrally adjudicate cases, particularly those related to detention.

64. Reconstitution of the BIA. The BIA's transformation into an enforcement arm of the administration has been even more stark. This is evidenced through: (1) the similar mass purging of its members; (2) the statistical evidence behind its decision making; (3) the timing and nature of its decisions; and (4) the agency's impending regulation that will transform the BIA into a body that merely rubber-stamps decisions to deport or detain noncitizens.

65. First, after taking office, the current administration purged BIA members from twenty-six to nine,[12] including all members who were appointed under the prior administration.[13] This allowed for a smaller majority to publish decisions and thus highlighted the agency's lack of independence.[14] After the purge, it hired six members: five of whom were former prosecutors, and one of whom as a former immigration judge denied 92% of all asylum claims.[15]

66. Second, between January 20, 2025 and March 6, 2026, the reconstituted BIA has issued 81 published decisions.[16] *All but two* of these decisions found against the noncitizen,[17] resulting in a 97% pro-government rate. All decisions involving bond proceedings ruled against the noncitizen; some reversed prior grants and called for re-detention.[18] By contrast, the prior administration over its four-year span issued 76 published decisions, 60% of which favored the government.[19] The transformation from 60% to 97% pro-government outcomes speaks for itself: the BIA provides far from meaningful review of an IJ's decision.

67. Third, the administration's copious precedential decisions are largely published *post hoc* to defend the administration's policies, rather than proceeding from neutral adjudication of

---

[12] *See* Catholic Legal Immigration Network, Inc., "Precedent or Policy? A Quiet Transformation of the Board of Immigration Appeals" (Aug. 22, 2025), https://www.cliniclegal.org/resources/precedent-or-policy-quiet-transformation-board-immigration-appeals.

[13] Cassler, Rebecca, "BIA Decision Strips Immigration Judges of Bond Authority, All but Guarantees Mandatory Detention for Undocumented Immigrants," AMERICAN IMMIGRATION COUNCIL (Sept. 12, 2025), https://www.americanimmigrationcouncil.org/blog/bia-ruling-immigration-judges-bond-mandatory-detention-undocumented-immigrants/.

[14] *Id.*

[15] "Meet the Board of Immigration Appeals, https://www.justice.gov/eoir/board-of-immigration-appeals#board (last accessed Feb. 13, 2026); "Judge Marcos Gemoets FY 2019 - 2024, Houston Immigration Court," https://tracreports.org/immigration/reports/judge2024/00501HOU/index.html (last accessed Feb. 13, 2026).

[16] *See* U.S. DOJ, Executive Office for Immigration Review, *BIA Precedent Decisions, Vol. 29*, online at https://www.justice.gov/eoir/volume-29 (last accessed Feb. 13, 2026).

[17] One decision purportedly in favor of the noncitizen described the methods in which an IJ can pretermit an application for relief prior to any evidentiary hearing, and remanded the case back to the IJ to follow that method. *See Matter of C-A-R-R-*, 29 I&N Dec. 13 (BIA 2025). The other decision did not involve a noncitizen, but rather, disciplinary proceedings against an attorney. *See Matter of Landers*, 29 I&N Dec. 240 (BIA 2025).

[18] *See* Catholic Legal Immigration Network, Inc., "Precedent or Policy? A Quiet Transformation of the Board of Immigration Appeals."

[19] *See* U.S. DOJ, Executive Office for Immigration Review, *BIA Precedent Decisions, Vol. 28*, online at https://www.justice.gov/eoir/volume-28.

controversies. In the bond context, the BIA has issued a series of decisions that now subjects vast swaths of noncitizens–including {number}[20] of the Petitioner in this action–to mandatory detention. *See, e.g.*, *Matter of Q. Li*, 29 I&N Dec. 66; *Matter of Yajure Hurtado*, 29 I&N Dec. 216. These decisions upend decades-long understanding of federal law, as federal judges have repeatedly found.[21] Notably, they come as the DHS has received exorbitantly more money to detain immigrants in for-profit immigration detention centers.[22]

68. Finally, the BIA is poised to implement a regulation next month that is "tailor-made to advance the Trump administration's mass deportation agenda."[23] Under the rule, the BIA's default practice will be to immediately dismiss appeals within 15 days, unless a majority of BIA's 15 members vote to review it *en banc* before then.[24] The rule also requires noncitizens to file their notices of appeal within 10 days of the IJ's decision.[25] Considering the takeover of the Immigration Courts as an enforcement arm of the administration, the rule will legally establish the BIA's function as a rubber-stamp of orders to deport and detain.

69. Policy. The administration has also made clear its intent to utilize EOIR as an enforcement arm through various policy memoranda and guidance. For example, shortly after becoming EOIR's acting director, Sirce E. Owen issued "a string of sharply worded policy memos" that many IJs found "menacing"; one former IJ recalled them as "extremely combative

---

[20] Because {name(s)} entered through a port of entry, {they} would have been subject to mandatory detention at the border prior to {their} grant of parole by DHS regardless of the BIA's recent decisions.
[21] Gerstein, Josh and Kyle Cheney, "Immigration appeals court expands mandatory detention for millions" POLITICO (Sept. 5, 2025), https://www.politico.com/news/2025/09/05/immigration-mandatory-detention-00548660.
[22] Dickerson, Caitlin, "ICE's Mind-Bogglingly Massive Blank Check" THE ATLANTIC (July 31, 2025), https://www.theatlantic.com/politics/archive/2025/07/ice-budget-immigration-enforcement/683678/.
[23] Orozco, Adriel D., "DOJ Moves to End Administrative Immigration Appeals to Speed Up Mass Deportations," AMERICAN IMMIGRATION COUNCIL (Feb. 13, 2026), https://www.americanimmigrationcouncil.org/blog/justice-departments-end-immigration-appeals-deportations/.
[24] Appellate Procedures for the Board of Immigration Appeals, 91 FR 5267 (Feb. 6, 2026) (amending 8 C.F.R. Parts 1003, 1208, 1240).
[25] Appellate Procedures for the Board of Immigration Appeals, 91 FR 5267 (Feb. 6, 2026) (amending 8 C.F.R. Parts 1003, 1208, 1240).

and derogatory."[26] In one of them, she warned IJs not to demonstrate "bias directed against DHS" or to be "adjudicatory outliers," at risk of "close examination and potential action."[27] Tellingly, a leaked memo from DHS admitted its active coordination with DOJ to expand mandatory detention.[28] In January 2026, the Chief Immigration Judge Teresa L. Riley directed all IJs by email to ignore a district court order holding that one of the BIA's efforts to expand mandatory detention was unlawful.[29] The District Court Judge who issued the order subsequently issued a decision finding that the government was not merely disagreeing with her legal conclusions—it was engaged in "deliberate" defiance, "manufacturing arguments," and instructing IJs to rely on "interpretations that were expressly found unlawful."[30] No clearer evidence of institutional capture could exist: when presented with a federal court order protecting noncitizens' rights, EOIR's response was to order judges to violate it. *See* Order Adopting Report and Recommendation, *Marco M. v. Bondi, et al.*, No. 0:25-cv-04816-MJD-JFD, at 3 (D. Minn. Jan. 25, 2026) ("There has been an undeniable move by the Government in the past month to defy court orders or at least to stretch the legal process to the breaking point in an attempt to deny noncitizens their due process rights.").

70. The government's interest in re-detaining Petitioner without due process is low. Respondents' interest in detaining Petitioner without a hearing is low, and the burden on Respondents to refrain from re-detaining them unless and until they are provided with hearing that comports with due process is "minimal." *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). Their administrative burden is low, given that the government conducts bond and bail hearings every day as a matter of course. Their

---

[26] Kim, Tammy E., "Inside Donald Trump's Attack on Immigration Courts," THE NEW YORKER (Oct. 23, 2025).

[27] Kim, Tammy E., "Inside Donald Trump's Attack on Immigration Courts," THE NEW YORKER (Oct. 23, 2025).

[28] Interim Guidance from U.S. Department of Homeland Security to All ICE Employees Re: "Detention Authority for Applications for Admission" (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

[29] Am. Immigr. Laws. Ass'n, Practice Alert: EOIR Issues Nationwide Guidance on *Maldonado Bautista*, AILA Doc. No. 26011404 (Jan. 16, 2026), https://www.aila.org/library/practice-alert-eoir-issues-nationwide-guidance-on-maldonado-bautista.

[30] *See Palomera Baltazar v. Janecka*, No. 5:26-cv-00019-SSS-BFM at *2-3 (C.D. Cal. Jan. 16, 2026).

fiscal burden is also low, particularly in relation to the high cost of detention. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million."). When weighed against Petitioner's significant private interest in their liberty, the scale tips sharply in favor of enjoining Respondents from confining them unless and until DHS demonstrates by clear and convincing evidence that they are a danger or flight risk.

71. In addition, and as already detailed above, DHS already determined that Petitioner did not present a danger or flight risk when it released them from its custody after their arrival in the United States. Petitioner's subsequent conduct only bolsters these findings–they have lived, worked, and gone to school in our communities, deepened their family ties, attended every required in-person check-in and court hearing, and never received any criminal convictions let alone criminal charges. Respondents' interest in detaining Petitioner at this time is therefore low and weighs in favor of affording them such hearings *before* they are taken into custody. That DHS has a new policy to make a minimum number of arrests each day under the new administration does not constitute a material change in circumstances or increase the government's interest in detaining him. *See Singh v. Andrews*, -- F., Supp.3d --, 2025 WL 1918679, at *2 (E.D. Cal. July 11, 2025) ("The law requires a change in relevant facts, not just a change in [the government's] attitude") (internal quotations omitted).

72. Respondents' interest in detaining Petitioner at this time is therefore low and weighs in favor of affording them such hearings *before* they are taken into custody. That DHS has a new policy to make a minimum number of arrests each day under the new administration does not constitute a material change in circumstances or increase the government's interest in detaining him. *See Singh*, 2025 WL 1918679, at *2 ("The law requires a change in relevant facts, not just a change in [the government's] attitude") (internal quotations omitted).

73. Respondents' re-detention of Petitioner also violated their Fourth Amendment protections against unreasonable seizures. The Fourth Amendment applies to seizures by immigration authorities. *See U.S. v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (applying Fourth Amendment principles from criminal context to "limit" scope of immigration agents' seizure

authority); *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 817 (9th Cir. 2020) (Fourth Amendment limits apply equally to seizures in criminal and civil immigration context). That protection necessarily extends to prevent re-arrests of noncitizens without a change in circumstances, in order to prevent "harassment by continual rearrests." *See United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971) (Stevens, J.) (finding Fourth Amendment violated in criminal context where rearrest without change in circumstances).

74. Petitioner as established *supra*, Sections I-II, was re-arrested without any material change in circumstances. As such, Respondents violated their Fourth Amendment rights against unreasonable seizures.

75. Respondents violated the Administrative Procedure Act. Under the APA, courts may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right." 5 U.S.C. § 706(2). In order to be reviewable under the APA, the challenged action must constitute final agency action, which includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

76. Although the INA purports to authorize DHS to revoke a parole "at any time," DHS has long applied the rule promulgated by the BIA in *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981) in the context of parole revocation–that DHS requires a showing of a "material change in circumstances" before re-detaining noncitizens it previously released on parole. *See Saravia*, 280 F. Supp. 1168. Regardless, "[e]ven when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Vilela*, 2025 WL 3101334, at *3.

77. DHS's decisions to re-detain Petitioner constitute reviewable final agency action because the re-detentions mark the "consummation" of the DHS's decision-making process on the question of Petitioners/Plaintiffs' custody, and it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1977) (internal citations omitted). Indeed, the "practical and legal effects of the agency

action" are that Petitioner has been deprived of their liberty with no end in sight. *Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 982 (9th Cir. 2006).

78. Courts must "hold unlawful and set aside agency actions, findings and conclusions" that are (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (b) contrary to constitutional right, power, privilege or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (d) without observance of procedures required by law. 5 U.S.C. § 706(2). Final agency action is arbitrary and capricious if the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted). Courts may not consider an agency's " impermissible post hoc rationalizations." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (internal citations omitted).

79. DHS's decisions to re-detain Petitioner was an abuse of discretion and contrary to law where it departed from its policy and practice of requiring a "material change in circumstances" before re-detaining noncitizens it had originally released on parole. *See Saravia*, 280 F. Supp. 3d at 1187. The decisions were also arbitrary and capricious in violation of the APA where the agency failed to contemporaneously—or ever—articulate any flight-risk or danger-based justifications for those decisions. And as described *supra*, Sections I-II, the decisions were also contrary to constitutional right.

80. In fact, in *Garro Pinchi v. Noem*, a court in the Northern District of California found there was a likelihood of success on the claim that DHS's policy of redetaining those entered without inspection without an individualized determination that a "material change in circumstances" now made the noncitizen a flight risk or danger violated the APA. No. 25-CV-05632-PCP, --- F. Supp. 3d ---, 2025 WL 3691938, at *29 (N.D. Cal. Dec. 19, 2025). The *Garro Pinchi* court provisionally certified a class and held that the application of the redetention policy to that class was unlawful. *Id.* at *12. {Petitioners who EWId} are members of the *Garro Pinchi* class because they are "in the jurisdiction of the San Francisco ICE Field Office"; "entered . . . the United States without inspection"; "have been charged with inadmissibility under 8 U.S.C.

§ 1182 and have been . . . released from DHS custody"; "are in removal proceedings under 8 U.S.C. § 1229a, including any § 1229a proceedings that have been dismissed where the dismissal is not administratively final"; and "are not subject to detention under 8 U.S.C. § 1226(c)." *Id.* Petitioner's detention of them therefore is in explicit violation of the *Garro Pinchi* preliminary injunction order.

81. "The touchstone of the Fourth Amendment is reasonableness . . . ." *United States v. Knights,* 534 U.S. 112, 118 (2001). This is "generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *County of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)). Overall, reasonableness is an objective inquiry that "is evaluated by looking at the 'totality of the circumstances.'" *Case v. Montana*, 607 U.S. ---, 146 S. Ct. 500, 508 (2026) (first quoting Barnes v. Felix, 605 U.S. 73, 80 (2025); and then quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

82. The Fifth Amendment guarantees a different constitutional protection: due process. The Fifth Amendment states that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

83. The Supreme Court has emphasized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). Further, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."3 *Zadvydas*, 533 U.S. at 693.

//

//

//

## CAUSE OF ACTION

### COUNT ONE

### Violation of the Fifth Amendment Due Process Clause

### Substantive Due Process

84. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

85. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores,* 507 U.S. 292 (1993); *Zadvydas*, 533 U.S. 678; *Demore*, 538 U.S. 510.

86. "The Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

87. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

88. Immigration detention only comports with Due Process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id*. (cleaned up).

89. Immigration detention that does not serve the legitimate government purposes of preventing flight or mitigating danger violates substantive Due Process. *Id*.

90. Petitioner's detention violates the Due Process Clause because it is not rationally related to any legitimate government purpose, as Respondents already found each to not pose a danger nor a flight risk, and there has been no material change since. Petitioner has actually demonstrated more that he is none of these because of all he has done these past four years.

91. Continuous, executive detention without any available path to administrative or judicial custody review constitutes an unconstitutional deprivation of fundamental liberty.

92. Freedom from bodily restraint is the core of the Due Process Clause. Respondents using

*Matter of Q-Li-*, to indefinitely and arbitrarily detain Petitioner is completely insulated from any neutral finder of fact. When detention is stripped of procedural safeguards (like access to a bond forum), it ceases to be regulatory and becomes unconstitutionally punitive.

**COUNT TWO**

**Violation of the Fifth Amendment Due Process Clause**

**Procedural Due Process**

93. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

94. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up).

95. Under *Mathews v. Eldridge*, courts evaluate procedural Due Process by balancing 1) the private interest affected; 2) the risk of erroneous deprivation of such interest; and 3) the government's interest. 424 U.S. at 335.

96. Immigration detention always implicates the liberty interest in "freedom from imprisonment." *Zadvydas*, 533 U.S. at 690. In addition, when the government releases someone, they retain a liberty interest in their on-going release from government custody. *Morrisey*, 408 U.S. at 482; *J.O.L.R.*, 2025 WL 2718631, at *3-4.

97. Where a detained individual does not receive any pre-deprivation hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Garro Pinchi*, 792 F. Supp 3d at 1035 (cleaned up); *Alegria Palma*, No. 25-cv-1942-BJC-MMP at *6 ("Given that Petitioner was previously released following a determination that he posed no flight risk or danger to the community, and absent any new evidence showing a material change in circumstances, the risk of erroneous detention without a hearing is substantial.").

98. The government can claim no interest in re-detention where there are no changed circumstances going to flight risk or danger that warrant re-detention. *See Garro Pinchi*, 792 F.

Supp 3d at 1035. Thus, a fair process for proving the existence of such changed circumstances satisfies any government interest in re-detention.

99. Because the government has not afforded Petitioner a pre-deprivation hearings to determine whether changed circumstances going to flight risk or danger warrant their re-detention, their detention violates procedural Due Process.

100. Procedural due process requires, at minimum, notice and an opportunity to be heard before a neutral decision-maker. By applying *Matter of Q-Li-* to deny a bond hearing entirely, Respondents have denied that opportunity to Petitioner. Furthermore, a mere remand to a structurally biased and uniform administrative framework is incapable of curing this constitutional deficiency, thereby requiring this Court to provide the process itself by evaluating the custody risk directly.

**COUNT THREE**

**Violation of the Fourth Amendment**

101. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

102. The Fourth Amendment protects the right of all persons present in the United States to be free from unreasonable seizures by government officials. Petitioner therefore has the right to be free from unreasonable seizures. As a corollary to that right, the Fourth Amendment prohibits re-arrest on the same charge without a material change in circumstances.

103. DHS violated the Fourth Amendment when they re-arrested Petitioner without a material change in circumstances and especially since these facts were not presented to him. Respondents re-detained Petitioner and wait four years to formally charge him with an NTA.

**COUNT FOUR**

**Violation of the Administrative Procedure Act**

**5 U.S.C. § 706(2) (arbitrary and capricious agency action)**

104. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

105. The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" or are "contrary to constitutional right." 5 U.S.C. § 706(2)(A)–(C).

106. ICE's decisions to re-detain Petitioner constitute final agency action where they mark the "consummation" of agency decision making and are actions "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178.

107. Because DHS has failed to articulate contemporaneous rational explanations for its decisions to re-detain Petitioner without a pre-detention hearing, and because it cannot provide a post-hoc rationalization for those decisions, they are arbitrary and capricious in violation of the APA. *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 42–43; *Regents*, 591 U.S. at 21.

108. Because DHS's decisions to re-detain Petitioner was also contrary to constitutional right, they were also in violation of the APA.

109. In addition, DHS's decisions to re-detain Petitioners/Plaintiffs {names} violates the court's preliminary injunction order in *Garro Pinchi*, No. 25-CV-05632-PCP, 2025 WL 3691938.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners/Plaintiffs respectfully request that this Court:

a) Assume jurisdiction over this matter;

b) Order that Petitioners shall not be transferred outside of the Central District of California while this petition is pending;

c) Issue an Order to Show Cause ordering Respondents to show cause within three days why this Petition should not be granted;

d) Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody;

e) Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or danger to the community in compliance with governing law and due process;

f) Award reasonable attorneys' fees and cost pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and

g) Order further relief as this Court deems just and appropriate

Respectfully submitted,

Dated: 10/01/2026

*/s/ Karla P. Navarrete*
Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: aogadakarla@gmail.com
Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: 10/01/2026

*/s/ Karla P. Navarrete*
Karla P. Navarrete, Esq (CA SBN#: 289891)
Law Office of Karla Navarrete
8997 California Ave., Suite B
South Gate, CA 90280-3065
Telephone: (213) 444-9563
Email: abogadakarla@gmail.com

**LIST OF EXHIBITS**

**Exhibit A** – Parole Stamp

**Exhibit B** – I-589 Receipt Notice

**Exhibit C** – ASC Biometrics Confirmation

**Exhibit D** – Employment Authorization Document

**Exhibit E** – Petitioner's Notice to Appear

**Exhibit F** – Form I-213

**Exhibit G** – Bond Denial Order